Argued May 2; modified May 24, 1949

## WILLIAMSON *v* WILLIAMSON

206 P. 2d 605

*Harold Banta,* of Baker, argued the cause for appellant. On the brief were Hallock, Donald, Banta & Silven, of Baker.

*J. D. Lane,* of Ontario, argued the cause and filed a brief for respondent.

Before LUSK, Chief Justice, and BRAND, ROSSMAN and BAILEY, Justices.

BRAND, J.

On 15 April 1941, the plaintiff Barbara Williamson secured a divorce from defendant Sylvan D. Williamson and was awarded custody of Betty Alice Williamson, the minor child of the parties, who was then nearly five years of age. On 2 July 1946 the defendant filed a motion for modification of the decree seeking custody of the child and the elimination of the provision of the original decree which required him to pay $20 a month for her support. With the petition the defendant tendered to the county clerk $480 representing the arrears of support money due under the original decree. On 18 June 1947 the defendant filed a second motion seeking a modification of the rights of visitation. Without withdrawing from his prayer for permanent custody of the child he asked that "at least" he be granted definite visitation rights with the right to have the child with him during the summer and other vacation periods. The case was tried upon affidavits and upon oral testimony and on 5 August 1947 both petitions were denied. The defendant appeals.

The oral testimony deals chiefly with events which transpired in connection with two occasions on which the defendant went to Eugene for the purpose of visiting the child. The first visit was in August, 1944. Prior to that time the plaintiff had married U. M. Bobinette and the defendant had also remarried. The defendant and his then wife, Barbara Williamson, knocked at the door of the home in which Mr. and Mrs. Bobinette then resided. Betty Alice was inside the house, and, so far as the record shows, was alone. She saw her father through the window, recognized him, but refused to go to the door. As a witness at the trial she stated that she did not admit them because she was

afraid they would take her away. No satisfactory reason for such fear has been shown. Later in the day harmonious relations were established, at least, superficially, between the Williamsons and Bobinettes and the defendant and his wife had a visit of a few hours with Betty Alice. The second attempted visit was when the defendant, his wife, and Gordon Fullerton, a friend, came to Eugene in the latter part of November or early in December, 1944, on which occasion they saw Betty Alice at her home, and arrangements were made permitting them to take her out to dinner in the evening. They left with the little girl about seven P. M. under instructions to return by eight o'clock which was the child's bedtime. A few minutes after eight P. M., and while the Williamsons and the child were still at dinner, they received an agitated telephone call from Mr. Bobinette demanding the immediate return of the child. The testimony is conflicting as to the time of their actual return, the latest hour suggested by anyone being nine-thirty P. M. The defendant testified concerning events occurring on the return to the house as follows:

"Q What happened then when you got back to Mr. Bobinette's house there?

"A We got out of the car and started up the walk and Mr. Bobinette came to the door and he said—held his hand out and said 'One step closer and you are trespassing on my property,' he said 'don't come any nearer,' and grabbed Betty. She had her arms full of bundles and had to be twisted in his arm through the door.

"Q You had no opportunity to say goodbye?

"A I said 'Look Bob, that is my daughter. I will see her whenever I want to.' He said 'I don't give a damn if you are her grandaddy, you won't

come on these premises again. If you do you are trespassing,' and slammed the door in my face.

"Q In that discussion was there considerable profanity?

"A It was flying so fast it was hard to tell what he was saying.

"Q What did he say? Was he angry?

"A He was either under the influence of liquor or had lost his temper or was under dope or something. No human man should act that way."

■ The defendant's testimony is corroborated in substantial particulars by that of Mrs. Williamson, Gordon Fullerton, and to some extent by the testimony of Mr. Bobinette and of Betty Alice. It appears that Mr. Bobinette's rage was aroused by the fact that the defendant, in company with his daughter, but in the absence of the Bobinettes, had gone through some of the rooms of the house on the afternoon preceding the agreed dinner. The incident is mentioned here because the defendant bases his asserted right to a change of custody upon charges against Mr. Bobinette. He asserts that Mr. Bobinette is of a dictatorial and domineering disposition and is unduly severe with the child and attempts to discipline and control every detail of her life. There is no evidence that Mrs. Bobinette, the mother, is unfit to have the custody of the child, and it may be added that the evidence establishes that the defendant and his present wife are maintaining a suitable home and that they also would be fit and proper persons to have custody of the child. There are affidavits on file by Dr. S. T. Donahue, who for one year was a next-door neighbor to the Bobinettes, Mrs. Donahue, and their son, Joel Donahue; also by Mr. Herbert Alton, a case worker with the State Welfare Commission, a neighbor; and Mr. H. E.

Cully, who lived directly across the street from the Bobinettes. No good purpose will be served by repeating the statements contained in these affidavits. They picture Mr. Bobinette as an intolerant, obstinate man, an undesirable citizen, and one who was exceedingly rough and domineering in his treatment of the child. They convince us that Mr. Bobinette was hard to get along with and that he considered everyone in the vicinity to be out of step but himself. On the other hand, the affidavits are couched in violent and intemperate language and an examination of the entire testimony shows that there was hard feeling between the affiants named and the Bobinettes which grew out of petty matters unconnected with any alleged abuse of the child by Mr. Bobinette. We suspect that the fault in these extraneous matters was that of Mr. Bobinette, but we think that the great weight of the testimony supports the finding of the trial judge who refused to change the custody of the minor child. The evidence convinces us that the child is well cared for, and though treated with some sternness, if not severity, by Mr. Bobinette, is nevertheless happy in their home and has acquired a fondness for him. The trial court with consent of both parties conducted the examination of Betty Alice in the chambers in the absence of both parents. Her testimony appeared to be freely given and there was no evidence that she had been under the domination of any person in connection therewith. It is apparent that she no longer has any fear of her father, but it is also clear that she desires to remain in the custody of the plaintiff and in the Bobinette home. She appears to be happy and well cared for. The trial court did not err in denying the defendant's petition for a change of custody.

■ The situation concerning the right of visitation, however, has materially changed. The violent antagonism manifested by Mr. Bobinette has, for all practical purposes, rendered the right of visitation at the Bobinette home of no value to the defendant. The child, who will soon be thirteen years of age, admitted that the defendant had been good to her, but also admitted that she was scarcely acquainted with him at all. If the defendant and his daughter are to have any opportunity to establish affectionate relations, some method other than that provided in the present decree must be devised. The defendant is living upon a farm near Vale, Oregon. He has a suitable home, and we think that it is not only the right of the defendant, but also for the best interest of the child that they should have a genuine opportunity to become acquainted. The desired results can only be accomplished by giving to the defendant the right to have the child with him at the farm for a period of time each year which will not interfere with her schooling at Eugene. The decree of the circuit court will therefore be modified to the extent that the defendant is authorized to have with him at his home his daughter, Betty Alice, for a period of one month during each summer vacation until further order of the court having jurisdiction of this cause. Unless the parties stipulate for a different date the plaintiff is directed to deliver Betty Alice at the home of the plaintiff in Eugene to the temporary custody of the defendant on the 15th day of July of each year, and the defendant is directed to return the child to her mother thirty days thereafter. The defendant will be relieved from the duty to pay support money for the said period of one month each summer. Neither party will recover costs.